**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| ANN FLOWERS, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>UNITED STATES POSTAL SERVICE, )<br>)<br>Defendant. ) | Case No. 08 C 552 |

**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY, District Judge:

The United States Postal Service, the defendant in this *pro se* lawsuit, has moved to vacate the order of default the Court entered, on its own motion, on December 17, 2008. The Court denies the motion without prejudice. The Court will entertain a prompt renewed motion to vacate if defendant can meet certain conditions designed to eliminate the prejudice that plaintiff Ann Flowers will experience from having to litigate the case on the merits and to avoid recurrence of the events that led to the entry of default in the first place.

**Background**

Ms. Flowers filed a *pro se* lawsuit against the US Postal Service, her former employer. In 1992, she suffered an on-the-job injury that prevented her from working. She made a worker's compensation claim, which was approved. Eventually she was cleared to return to work, and she requested reinstatement. In 1996, the Postal Service offered her a full time job conditioned on meeting certain requirements. She rejected

the offer and filed an internal equal employment opportunity complaint. The Postal Service rejected her complaint. Ms. Flowers continued to receive worker's compensation benefits through the end of 2002. Her doctor again cleared her to return to work in August 2003. She requested reinstatement, but the Postal Service denied her application. Ms. Flowers challenged this decision on equal employment and other grounds, but her challenge failed.

In May 2007, Ms. Flowers learned that the Postal Service had hired male employees to fill various maintenance vacancies. She alleges that although a Postal Service personnel manager had told her she would get the next available vacancy, the agency did not contact her when the maintenance positions became open. Ms. Flowers filed a new internal equal employment complaint. The Postal Service rejected the complaint, concluding that it raised claims identical to those Flowers had asserted unsuccessfully in 2003. Ms. Flowers appealed to the Equal Employment Opportunity Commission, which upheld the Postal Service's decision. She then filed this suit in January 2008, alleging retaliation for her earlier complaints, as well as discrimination based on age, disability, race, and gender.

The Court granted Ms. Flowers leave to proceed *in forma pauperis* and directed the Marshal to serve the defendant with summons. The Postal Service was served in March 2008. On May 19, 2008, an Assistant United States Attorney (AUSA) filed a motion for extension of time to respond to the complaint. The Court granted the motion by an order dated May 22, 2008, giving the Postal Service until June 18 to respond and setting a status hearing for July 1, 2008. The Postal Service responded to the complaint on the date the Court had set, filing a motion to dismiss in which it asserted

the same preclusion argument the Postal Service had relied upon in rejecting Ms. Flower's internal complaint. Both the AUSA and Ms. Flowers participated in the status hearing on July 1. The Court entered an order setting a briefing schedule on the motion to dismiss. Ms. Flowers responded to the motion in timely fashion, and the AUSA filed a timely reply.

On November 8, 2008, the Court entered an order denying the Postal Service's motion to dismiss. The Court determined that it was clear from Ms. Flowers' complaint that she was challenging only the Postal Service's failure to hire her in 2007, not the failure to reinstate her in 2003 that had been the subject of her earlier complaint. As the Court stated, "[t]hese are plainly different claims; the USPS cites no court decisions suggesting that the doctrine of claim preclusion applies in this situation." Order of Nov. 8, 2008 at 2.

In its November 8 order, the Court directed the Postal Service to answer the complaint by November 24, 2008 and set the case for a status hearing on December 4, 2008. The Postal Service did not answer the complaint as ordered. No one appeared for the December 4 status hearing – neither the AUSA nor Ms. Flowers (either in person or by telephone). The Court entered an order that same date, which stated as follows:

> Status hearing held. Plaintiff fails to appear. Both sides are ordered to appear and show cause why a sanction should not be imposed, which may include dismissal of case or entry of default. Status hearing set for 12/17/2008 at 09:30 AM.

Order of Dec. 4, 2008.

On December 17, Ms. Flowers appeared (by telephone), but once again, no one appeared for the Postal Service. The Court entered an order stating:

3

> Status hearing held. Defendant fails to appear. Defendant is found in default as a sanction for failing to appear. Status hearing continued to 1/8/2009 at 10:00 AM., with plaintiff by telephone. Clerk of Court is directed to send a copy of this order to Assistant U. S. Attorney Thomas Walsh.

Order of Dec. 17, 2008.[1] The Postal Service has now moved to vacate the December 17 order.

## Discussion

Though the Court's December 17 order stated that it was holding the Postal Service in default "as a sanction for failing to appear," it was equally true that the Postal Service was in default for failing to answer the complaint after the Court denied the motion to dismiss. *See* Fed. R. Civ. P. 55(a). The Court effectively held the Postal Service in default both as a sanction for its disregard of the Court's orders and pursuant to Rule 55(a).

No motion by the plaintiff is needed to enter an order of default when a defendant fails to respond to a complaint in timely fashion. *See id.* (authorizing clerk to enter the defendant's default). The Court likewise unquestionably had the authority to hold the defendant in default for its failure to abide by the Court's orders on two separate occasions. *See generally Link v. Wabash R.R. Co.*, 370 U.S. 626, 629-30 (1962) (court has inherent authority to dismiss a plaintiff's case for want of prosecution, essentially the flip side of defaulting a defendant for failure to appear and abide by court orders). Federal Rule of Civil Procedure 55(d) imposes limits on a court's ability to enter a default *judgment* under Rule 55 against the United States or one of its

---

[1] Mr. Walsh is a supervisor in charge of the US Attorney's Office's civil division. He was not the AUSA assigned to this case.

agencies, but that Rule imposes no limits on entry of an order of default, and it does not relieve the government from the obligation to defend cases and comply with court orders. *See Alameda v. Sec'y of Health, Ed. & Welfare*, 622 F.2d 1044, 1048 (1st Cir. 1980).

Defendant's argument in favor of vacating the order of default consists largely of an attempt to shift blame to the Clerk's Office. The thrust of defendant's argument is that the AUSA assigned to the case was not at fault, and that the fault lay an "an inadvertent error and failure in the system." Motion to Vacate at 3. "The system" that was at fault was, in the defendant's view, the electronic filing system maintained by the Clerk. Examination of the record, however, makes it clear that the fault – and that is exactly what it was – is with the U.S. Attorney's Office and the AUSA assigned to the case. The Court certainly credits the AUSA's statement that his failure to appear or respond to the complaint was unintentional, but that by itself does not excuse his failure, as the Court will explain.

Under the an electronic filing system that this Court implemented in 2005, attorneys are required to file documents electronically rather than in paper format, and the Clerk sends notices of court filings, orders, and other docket entries electronically to all "e-filers" in the case. When an attorney files an appearance in a case, the Clerk's Office matches the name on the appearance form with the attorney's e-filing registration form and obtains from that form the e-mail address to which the attorney wishes notices of electronic filing to be sent. That e-mail address is entered onto the docket, and all notices of electronic filing (NEFs) in the case are sent to that address. E-filers bear the responsibility for updating their e-mail addresses if and when they changed, much as

5

lawyers with cases in this District long have had the responsibility to update information on their appearance forms if and when it changes.

Pursuant to a Local Rule of this District, AUSAs do not file "appearances" – in contrast to all other lawyers who litigate cases here. See N.D. Ill. LR 83.16(b). This leads to what defendant refers to as a gap in the electronic filing system. But in fact a gap exists only to the extent the US Attorney's Office consciously allows one to exist. First, as defendant concedes, "AUSAs generally file 'designations' in order to guarantee ECF notice delivery . . . ." Def. Reply at 3. Defendant's admission that this is done "to guarantee ECF notice delivery" makes it clear that the US Attorney's Office is aware that it needs to take appropriate steps to ensure that it receives NEFs.[2] Second, as defendant also concedes, the Clerk's Office creates a "generic AUSA" entry on the docket whenever a case is filed involving the government or one of its agencies. See Def. Reply at 2. That entry includes an e-mail address, usailn.ecfausa@usdoj.gov, to which all notices of electronic filing in such a case are sent, both before and after the AUSA assigned to the case files a "designation." Thus even if the assigned AUSA fails to file a designation, the US Attorney's Office receives all NEFs on the case.

It may be true, as defendant argues, that the Clerk's Office has other mechanisms for "capturing" e-filer identification even when no appearance or designation is filed, such as by obtaining the information from a response to the complaint. But nothing in the Court's local rules, general orders, or operating

---

[2] When the Clerk's Office receives such a designation in a particular case, it dutifully enters the AUSA's e-mail address into the electronic filing system, and the AUSA thereafter receives directly all NEFs in the case.

procedures requires this. For this reason and the others referenced above, the US Attorney's Office cannot credibly maintain that when an AUSA fails to file either a designation or an appearance form in a given case, responsibility for the fact that NEFs in the case are not sent directly to that AUSA in that case lies with the Clerk's Office. In view of the fact that this so-called "gap" in the system is readily apparent and is concededly known to the US Attorney's Office, it is incumbent on that Office as a whole, and AUSAs in particular, to take the necessary steps to ensure that an AUSA assigned to a case actually receives NEFs relating to that case. Attorneys are, after all, responsible for keeping abreast of their cases, *see, e.g., Norgaard v. DePuy Orthopaedics, Inc.*, 121 F.3d 1074, 1075 (7th Cir. 1997) (lawyer's failure to check docket was inexcusable neglect), and there is no basis to relax this requirement for lawyers representing the government. More pointedly, the AUSA assigned to this case should have known, when he did not directly receive an NEF concerning the Court's May 22, 2008 ruling on his motion to extend time or one concerning the Court's July 1, 2008 order setting a briefing schedule on his motion to dismiss, that something was amiss and that he needed to take steps to remedy the situation.[3]

Defendant argues that "[t]he assigned attorney never received notice of either the November 8 order denying the motion to dismiss and setting a status hearing or the December 4 order setting another status hearing and requiring the parties to show

---

[3] There is a decent chance that the AUSA became aware of the ruling on motion to extend either because the undersigned judge posted notification of the rulings on his web page or via a telephone call to chambers, and the AUSA was, of course, in court when the Court set the schedule on July 1. This does not, however, excuse the AUSA's failure to take corrective action when he did not directly receive NEFs concerning the two orders.

7

cause for their failure to appear." Motion to Vacate at 1. The assigned AUSA's non-receipt of direct notice of the November 8 and December 4 orders is, however, attributable only to him and the US Attorney's Office. First, there is no dispute that the US Attorney's Office received notice of both orders. Defendant concedes this in its briefs on the motion to vacate. The detail in the NEF records maintained by the Clerk likewise establish that notice of both orders was sent to the US Attorney's Office at the previously mentioned address, usailn.ecfausa@usdoj.gov. If that notice was not brought to the assigned AUSA's attention, that is the fault of the US Attorney's Office's "system," not that of the Clerk's Office. Second, as should be clear from the discussion thus far, the assigned AUSA (or at least the US Attorney's Office) was aware of the need to file a "designation" to ensure receipt of NEFs but did not do so.

The Court analyzes the motion to vacate the default under the standards that apply under Rule 55 for setting aside a default. Rule 55(c) says that a court "may set aside an entry of default for good cause." Fed. R. Civ. P. 55(c). "In order to vacate an entry of default the moving party must show: (1) good cause for default (2) quick action to correct it and (3) meritorious defense to plaintiff's complaint." *Pretzel & Stouffer, Chtd. v. Imperial Adjusters, Inc.*, 28 F.3d 42, 45 (7th Cir. 1994) (reviewing entry of default when defendant had failed to file an answer to the complaint and its attorney had failed to attend a single status hearing). *See also, Breuer Elec. Mfg. Co. v. Toronado Sys. of Amer., Inc.*, 687 F.2d 182, 185 (7th Cir. 1982) ("[T]o have the entry of default set aside, it was incumbent upon defendant[ ] to show: good cause for [its] default, quick action to correct it and a meritorious defense to plaintiff's complaint."); *Jones v. Phipps*, 39 F.3d 158, 162 (7th Cir. 1994).

Defendant has satisfied the "quick action" requirement; it moved to vacate the order default within two weeks after its entry. Defendant has, however, made no effort to show that it has a meritorious defense to Ms. Flowers' complaint. That, by itself, is a sufficient basis to deny defendant's motion to vacate the default.

Even were defendant to have shown that it has a meritorious defense, the Court would be well within its discretion in denying the motion to vacate. Courts are not supposed to "enter defaults precipitately." *Sims v. EGA Prods., Inc.*, 475 F.3d 865, 868 (7th Cir. 2007). In this case, however, the Court did not do so – it gave defendant fair warning, in its December 4 order, that its continued disregard of the Court's orders could result in entry of default. As the Court has discussed, the assigned AUSA's lack of knowledge of that order and the earlier November 8 order directing defense counsel to appear does not warrant vacating the default. The orders were promptly entered on the docket; the US Attorney's Office received electronic notice of the orders; and the assigned AUSA would have received electronic notice of the orders had he filed a designation. The Seventh Circuit has stated that "'attorneys are expected to exercise diligence in monitoring the disposition of their cases,'" *Martinez v. City of Chicago*, 499 F.3d 721, 728 (7th Cir. 2007) (quoting *DeRango v. United States*, 864 F.2d 520, 523 (7th Cir. 1988)), yet that did not occur in this case. In addition, the breakdown of internal office procedures – the US Attorney's Office failure to take steps to forward NEFs received in the general mailbox to the assigned AUSA – is insufficient to support a finding of good cause. *See Lomas and Nettleton Co. v. Wiseley*, 884 F.2d 965, 968 (7th Cir. 1989) (concerning vacating a default judgment); *N. Central Ill. Laborers' Dist.*

*Council v. S.J. Groves & Sons Co.*, 842 F.2d 164, 167-68 (7th Cir. 1988) (same).[4]

That said, it is important to keep in mind that there is a preference for determining cases on their merits rather than via default. *See, e.g., Sun v. Bd. of TRS. of Univ. of Ill.*, 473 F.3d 799, 811 (7th Cir. 2007); *C.K.S. Eng'rs, Inc. v. White Mountain Gypsum Co.*, 726 F.2d 1202, 1209 (7th Cir. 1984). Defense counsel's conduct was careless, not deliberate, and there was not an extended pattern of conduct amounting to disregard of counsel's obligation to monitor the case. As indicated earlier, the Court is denying defendant's motion – albeit without prejudice – because defendant has not shown or attempted to show that it has a meritorious defense to plaintiff's claims. In anticipation of a renewed motion to vacate, however, the Court describes what defendant will have to show to warrant vacating the default.

- First, defendant will have to make a showing that it has a viable defense to plaintiff's claim. This will have to go beyond merely submitting a proposed answer to the complaint; defendant must describe its defense on the merits.

- Second, if the Court ends up vacating the default, it will almost unquestionably have to appoint counsel to represent Ms. Flowers, because she lacks the funds to retain counsel; depositions likely will be required; and she resides in Texas and cannot practicably litigate a case in Chicago on her own. The need to take depositions will entail an expense for appointed counsel. Were the Court to decide the case by default, this would not be necessary. Neither appointed counsel nor the Court

---

[4] The existence of a meritorious defense does not excuse carelessness. *See Pretzel & Stouffer*, 28 F.3d at 46; *Zuelzke Tool & Eng'g Co. v. Anderson Die Castings, Inc.*, 925 F.2d 26, 230 (7th Cir. 1991).

(via the pro bono fund) should have to shoulder the out-of-pocket expenses associated with taking and obtaining the transcripts of depositions that each side reasonably may have to take. Before the Court will consider vacating the order of default, defendant will have to undertake to shoulder this expense for both sides.

- Finally, to avoid recurrence of this situation in the future (in both this and other cases), the US Attorney's Office will have to establish an internal procedure by which an AUSA assigned to a civil cases is required to file a designation form with the Clerk at or before the time he files his first document with the Clerk in the case. There is some chance that the Court will institute, as part of its Local Rules, a requirement to file such a designation, but that will not obviate the need for effective internal controls to ensure that this sort of default does not occur in the future.

## Conclusion

For the reasons stated above, the Court denies without prejudice defendant's motion to vacate the default order [docket no. 32]. The Court also denies, as moot (at least temporarily moot), plaintiff's motion for appointment of counsel [docket no. 10]. The Court advises plaintiff, however, that if defendant meets the conditions the Court has set for a renewed motion to vacate the default order, the Court will appoint counsel for plaintiff if it ends up vacating the default order. The case is set for a status hearing on March 31, 2009 at 9:30 a.m. Plaintiff may call in to chambers to participate in the status hearing.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: March 16, 2009